Thomas C. Chimera, J.
Public housing is privileged housing available only to those of low income and only a few of the countless eligibles are fortunate enough to enjoy it. There are those who quarrel with the right and wisdom even of government to provide adequate housing for persons of limited income with taxpayers’ subsidy. No one, however, will hesitate in agreeing that if housing must be subsidized, the taxpayers may not be victimized by those unscrupulous few people with resources who “ eat ” of the “ bread ” reserved for their less fortunate brothers.
Defendants knew or should have known that the space they were privileged to occupy was subject to varying rentals with fixed minimum and maximum rentals, the power to fix such rentals resting exclusively with the Authority subject only to the terms of any loan or subsidy contract with the Government (Public Housing Law, § 154); that dwellings in public housing projects by law are available solely to persons or families whose “ probable aggregate annual income ” does not exceed certain specified multiples of the rentals (including the value or cost to them of heat, light, water and cooking fuel) of the dwellings to be furnished such persons or families (Public Housing Law, § 156).
Defendants knew or should have known that a fraudulent application standing alone is sufficient ground for ineligibility and eviction. (Rules and Regulations, [r.].)
Defendants knew or should have known that the Authority has the power to increase the rental progressively whenever the tenants’ increased resources are discovered. And retrogres *1009 sively, too, back to the very day that the tenants’ increased resources are discovered to have first materialized. (Rules and Regulations, [r.].)
Defendants knew or should have known that by law (Public Housing Law, § 156, subd. 4) and by standard procedure those ineligibles awaiting eviction are legally and properly required to pay “ maximum ” rental for the space occupied by them during the waiting period.
These are verities inherent in defendants’ contract with the Authority, and utmost candor is the principal prerequisite of their continued enjoyment of publicly subsidized space.
The evidence in this case fails to disclose what the true financial status of the defendants was at any time during their occupancy of the subject space. It is clear, however, that their application and subsequent financial statements were deliberately false at least in the vital matter of the male defendant’s relationship to his alleged employer and the former’s status in the “ employer ” firm. Indeed, the falsity in question is conceded by defendants and this concession is defendants ’ only contribution to the record of the trial.
Defendants argue that plaintiff has failed to prove that their resources exceeded the quantum declared by them in their application. True they cannot argue, however, that by filing a fraudulent application they have qualified as eligible occupants of the space they have enjoyed at any time during their last 33 months of occupancy. They may not argue with good grace that one who never was eligible is entitled to more favorable treatment than one who ceases to be eligible after a prior eligibility.
Plaintiff sues on two theories — one on the contract and two for fraud and deceit. Defendants contend that plaintiff must stand on the contract theory, while plaintiff, in its brief, elects to stand on the theory of fraud and deceit.
The problem in this case results from the fact that no formal notice appears to have been given to these or any other tenants regarding a resolution of the Authority filed according to law on or about April 15, 1953. That resolution, insofar as it is applicable here, reads as follows: “ Resolution No. 53-3-185. Article VI — Rents. Section 6.01. Retroactive Rent Surcharges. * * * b. If any tenant makes any material misrepresentation or conceals any material fact, other than such as may come within paragraph ‘ a ’ of this section, and a finding of ineligibility is made upon the ground of Misrepresentation, such tenant, in addition to being required to pay maximum rent *1010 subsequent to the finding of ineligibility, shall be required to pay retroactive rent charges represented by the difference between the maximum rent for the apartment occupied by the tenant and the actual rent paid by such tenant during the entire period of his occupancy from the date of such material misrepresentation. ’ ’
Justice would be a casualty if this court allowed itself to be drawn into a hair-splitting controversy, resulting in an “ imprimatur” on an obvious wrong. Moreover, there is no legal basis for denying plaintiff the right to elect to stand on the “ fraud ” theory.
I think there is enough in the evidence upon which to predicate a finding of fraud and deceit and to justify a judgment in favor of the plaintiff for the amount demanded in the complaint on that theory. Defendants’ only other argument worthy of consideration under the circumstances, challenges the validity of the measure of damages claimed by plaintiff.
I am not impressed with defendants’ argument that the difference between the rent paid and the “ maximum ” rent payable for the subject space is an unreasonable and arbitrary measure of damages on this theory. One thing is certain — even at “ maximum ” rental, public housing is subsidized housing and of greater value and desirability than any privately owned accommodation going for similar rentals in the present and recent “ markets ”. Differently stated — space comparable to any public housing unit would fetch substantially higher rentals in private markets than the maximum rentals fixed by the New York City Housing Authority in this and in every other public housing project. These, in my judgment, are facts of widespread knowledge and this court takes judicial notice of them.
We have it of old that no man may profit from his own wrong. It is a corollary of this time-honored dictum that a party aggrieved is damaged at least to the extent of the value of the wrongdoer’s ill-gotten gains.
Can anyone logically argue that a “ maximum ” rental which is less than the market value for comparable space is an uncertain or arbitrary measure of the reasonable value for use and occupation of a given housing accommodation?
Even if there were no printed rule or regulation (m), the clear implication of the underlying statute (Public Housing Law, § 156) authorized the Authority to demand full financial disclosure and to expect honest compliance.
Even if there were no Eesolution No. 53-3-185 (art. VI, § 6.01), in my judgment, the statutes (Public Housing Law, § 37, subd. 1, par. [w]; § 54, suibd. 1; § 156) are broad enough without any *1011 notice to defendants, written or otherwise, to justify the Authority’s action here and to entitle it to the relief herein sought. I think it was a valid exercise of its statutory power and it was its duty to take the steps it did here. More than this —.1 think these statutes are part and parcel of defendants’ rental agreement and they are hound by all of their implications.